UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
                                :
UNITED STATES OF AMERICA        :        SEALED INDICTMENT
                                :
        - v. -                  :        22 Cr.
                                :
GREGORY MCKENZIE,               :
                                :        22 CRIM 166
        Defendant.              :
                                :
- - - - - - - - - - - - - - - - X

## Overview

1.   On or about March 7, 2020, a .22 caliber, loaded
revolver ("Firearm") was recovered from inside the Metropolitan
Correctional Center ("MCC") in Manhattan, New York.  It was
recovered from inside a wall accessible to a particular cell on
a particular unit of the MCC.

2.   Federal law enforcement agents in the Southern
District of New York have since been investigating the smuggling
of the Firearm into the MCC, as well as the smuggling of
contraband generally into the MCC.

3.   As described in greater detail below, between in or
about December 2019 and in or about December 2020, GREGORY
MCKENZIE, the defendant, worked as a correctional officer at the
MCC.  On or about January 30, 2020, MCKENZIE purchased a Samsung
brand prepaid cellphone ("McKenzie Prepaid Cellphone") in lower
Manhattan and used it on or about January 31, 2020, to
communicate with a particular inmate who was assigned to a cell

accessible to the wall where the Firearm was ultimately recovered ("Inmate-1"), and with that inmate's wife ("Inmate-1 Wife"). Cellphone records further show that MCKENZIE and Inmate-1 Wife exchanged multiple phone communications on the evening of on or about January 31, 2020, and that those communications culminated in their respective cellphones being in the vicinity of the same location in the Bronx, New York, at the same time.

4.    Later that night, at approximately 12:00 a.m., on or about February 1, 2020, GREGORY MCKENZIE, the defendant, began a shift on the unit where Inmate-1 was housed and where the Firearm was ultimately recovered on or about March 7, 2020.

5.    Phone records show that shortly after GREGORY MCKENZIE, the defendant, began his shift on or about February 1, 2020, at approximately 12:16 a.m., a cellphone then in use by Inmate-1 (defined below as "Contraband Cellphone-2") initiated a voice call of no duration and, 56 seconds later, sent a text message to the McKenzie Prepaid Cellphone at a time when the McKenzie Prepaid Cellphone was in the vicinity of the MCC.

6.    Surveillance video shows that nearly three minutes later, at approximately 12:19 a.m., MCKENZIE exited the guard's station on his assigned unit – alone – while appearing to carry an object under his left arm and walked to the tier on that unit

2

where Inmate-1's cell was located.  MCKENZIE remained on that tier for approximately thirty seconds.

7.    On or about November 4, 2021, GREGORY MCKENZIE, the defendant, voluntarily participated in an interview with two federal law enforcement agents.  During the interview, MCKENZIE made materially false statements about his purchase, possession, and use of the McKenzie Prepaid Cellphone and, in making such false statements, obstructed the Government's investigation into the smuggling of the Firearm, and contraband generally, into the MCC.

### The Defendant and Related Entities

8.    At all times relevant to this Indictment:

a.    The Bureau of Prisons ("BOP") was a federal law enforcement agency within the United States Department of Justice.  It was responsible for the care, custody, and control of incarcerated federal inmates, and for the administration of federal prisons.

b.    The MCC was a federal administrative detention facility operated by the BOP and located in Manhattan that, until recently, was one of several facilities used to house inmates committed to pretrial custody in the New York City area. The BOP employed correctional officers, among others, to ensure the care, custody, and control of the inmate population of the MCC.

9.   In or about 2016, GREGORY MCKENZIE, the defendant, was
hired by the BOP as a correctional officer at a federal prison
in Danbury, Connecticut.  Employment records identify MCKENZIE's
permanent address as located in Danbury, Connecticut, and his
permanent cellphone number as a phone number other than the
phone number assigned to the McKenzie Prepaid Cellphone.

10.  Beginning in or about December 2019, GREGORY MCKENZIE,
the defendant, was temporarily assigned to work at the MCC for a
term of approximately one year.  During that time period,
MCKENZIE continued to reside permanently in Danbury,
Connecticut, and he generally commuted between Danbury,
Connecticut, and the MCC by driving a particular vehicle
("McKenzie Vehicle") that was most recently registered in
MCKENZIE's name and was assigned a particular license plate
number.

**Inmate-1, Inmate-1 Wife, and Relevant Cellphones**

11.  Between on or about November 25, 2019, and on or about
February 26, 2020, Inmate-1 was assigned to the cell inside the
MCC from where the Firearm was recovered.

12.  While inside the MCC, Inmate-1 had access to, and
used, at least two contraband cellphones.  The first contraband
cellphone to which Inmate-1 had access ("Contraband Cellphone-
1") was assigned a particular phone number ending in 6845 and
was seized from Inmate-1's cell on or about February 26, 2020.

13.   The second contraband cellphone to which Inmate-1 had access ("Contraband Cellphone-2") was assigned a particular phone number ending in 5941 and was seized from a cell adjacent to Inmate-1's cell on or about February 28, 2020.

14.   At all relevant times herein, Inmate-1 was married to Inmate-1 Wife.  On or about November 30, 2019, Inmate-1 Wife activated a particular Motorola brand cellphone ("Inmate-1 Wife Cellphone").  The Inmate-1 Wife Cellphone was assigned a particular phone number ending in 2388 and was used by Inmate-1 Wife until in or about November 2020.

### Purchase and Activation of
### McKenzie Prepaid Cellphone on January 30, 2020

15.   On or about January 30, 2020, GREGORY MCKENZIE, the defendant, was assigned to work back-to-back eight-hour shifts at the MCC beginning at approximately 12:00 a.m. and ending at approximately 4:00 p.m.  Between approximately 12:00 a.m. and 8:00 a.m., MCKENZIE was assigned to the same unit where Inmate-1 was housed and from where the Firearm was recovered on or about March 7, 2020.  Between approximately 8:00 a.m. and 4:00 p.m., MCKENZIE was assigned to work in a different location of the MCC.

16.   Within two hours of GREGORY MCKENZIE, the defendant, completing his second shift at the MCC on or about January 30, 2020, at approximately 5:57 p.m., bank records associated with a

bank account opened by MCKENZIE ("McKenzie Bank Account"),
indicate that MCKENZIE withdrew approximately $120 in cash from
a bank branch located in lower Manhattan ("Bank Branch-1").

17.  As noted, the McKenzie Prepaid Cellphone — a Samsung
brand cellphone — was purchased on or about January 30, 2020,
from a particular store located in lower Manhattan.  The address
for that store is approximately one-tenth of a mile from Bank
Branch-1.  Cellphone service for the McKenzie Prepaid Cellphone
was paid for with cash.

18.  At approximately 6:05 p.m. (*i.e.*, approximately eight
minutes after GREGORY MCKENZIE, the defendant, withdrew
approximately $120 in cash from Bank Branch-1), the McKenzie
Prepaid Cellphone was powered on and accessing cellphone towers
in the vicinity of lower Manhattan, consistent with the McKenzie
Prepaid Cellphone having been purchased and first activated in
the vicinity of lower Manhattan.

19.  On or about January 31, 2020, at approximately 12:00
a.m., GREGORY MCKENZIE, the defendant, began an eight-hour shift
at the MCC on the unit where Inmate-1 was housed.

**Use of the McKenzie Prepaid Cellphone on January 31, 2020**

20.  At the conclusion of his eight-hour shift on or about
January 31, 2020, at approximately 8:08 a.m., GREGORY MCKENZIE,
the defendant, exited the MCC.

21.   A combination of cellphone location information, phone records, bank records, and license plate recordings demonstrate that on or about January 31, 2020, after having completed his shift, GREGORY MCKENZIE, the defendant, traveled with the McKenzie Prepaid Cellphone from the MCC in Manhattan, New York, to his residence in Danbury, Connecticut.

22.   Later that day, at approximately 2:14 p.m., the McKenzie Prepaid Cellphone received a voice call from Contraband Cellphone-1, at which time the McKenzie Prepaid Cellphone accessed a cellphone tower in the vicinity of Danbury, Connecticut.

23.   Subsequently, and consistent with GREGORY MCKENZIE, the defendant, starting a shift at the MCC beginning at 12:00 a.m. on or about February 1, 2020, cellphone location information, phone records, bank records, and license plate recordings all indicate that by the early evening of January 31, 2020, MCKENZIE began traveling from Danbury, Connecticut, to the MCC in lower Manhattan.

24.   Cellphone location information and bank records indicate that GREGORY MCKENZIE, the defendant, was in the vicinity of a particular location in the Bronx, New York, by approximately 7:50 p.m., on or about January 31, 2020, and that MCKENZIE remained in the vicinity of that same location at least until approximately 8:26 p.m.

25.   During that time period (*i.e.*, on or about January 31, 2020, between approximately 7:50 p.m. and 8:26 p.m.), the McKenzie Prepaid Cellphone exchanged approximately six voice calls with the Inmate-1 Wife Cellphone and approximately sixteen text messages with Contraband Cellphone-2.

26.   In particular, on or about January 31, 2020, at approximately 8:20 p.m., 8:21 p.m., and 8:26 p.m., the McKenzie Contraband Cellphone, respectively, initiated three voice calls to the Inmate-1 Wife Cellphone, at which times both cellphones were in the vicinity of the same location in the Bronx, New York.

27.   Cellphone location information and license plate recordings indicate that following the three voice phone calls described in the preceding paragraph, GREGORY MCKENZIE, the defendant, drove the McKenzie Vehicle to the vicinity of the MCC.

28.   Surveillance video from the MCC depicts GREGORY MCKENZIE, the defendant, entering the MCC on or about January 31, 2020, at approximately 11:48 p.m., walking around (rather than through) a stationary metal detector, and entering the unit where Inmate-1 was housed at approximately 11:49 p.m.

29.   Surveillance video from the MCC further depicts GREGORY MCKENZIE, the defendant, and another correctional officer ("CO-1"), doing rounds together on the unit where

Inmate-1 was housed between approximately 12:02 a.m. and 12:13
a.m.

30.   As noted above, at approximately 12:16 a.m.,
Contraband Cellphone-2 placed a voice call of no duration
followed, 56 seconds later, by a text message to the McKenzie
Prepaid Cellphone.

31.   At approximately 12:19 a.m., after CO-1 left the unit,
surveillance video depicts GREGORY MCKENZIE, the defendant,
leaving the guard's station on the unit where Inmate-1 was
housed, appearing to carry an object under his left arm, and
walking to the particular tier where Inmate-1's cell was
located.   The surveillance video depicts MCKENZIE remaining on
that tier for approximately thirty seconds.

**Use of the McKenzie Prepaid Cellphone on February 1, 2020**

32.   Surveillance video depicts that on or about February
1, 2020, at approximately 7:59 a.m., GREGORY MCKENZIE, the
defendant, left the MCC after having worked an eight-hour shift
on the unit where Inmate-1 was housed. MCKENZIE was off duty for
the remainder of February 1, 2020, as well as all of the next
day, on or about February 2, 2020.

33.   A combination of cellphone location information, phone
records, bank records, and license plate recordings demonstrate
that on or about February 1, 2020, GREGORY MCKENZIE, the
defendant, continued to possess the McKenzie Prepaid Cellphone

and used it to communicate with Contraband Cellphone-2 and the
Inmate-1 Wife Cellphone, among others, while traveling from
lower Manhattan, where the MCC is located, to Danbury,
Connecticut, where MCKENZIE resided.

### The November 4, 2021 Interview

34.  On or about November 4, 2021, a law enforcement agent
with the Federal Bureau of Investigation and a law enforcement
agent with the U.S. Department of Justice (collectively, the
"Federal Agents") identified themselves as federal law
enforcement agents and conducted a voluntary interview with
GREGORY MCKENZIE, the defendant, in Danbury, Connecticut (the
"November 4 Interview").

35.  By the time of the November 4 Interview, it was
material to the Federal Agents' investigation to learn who had
purchased, used, and possessed the McKenzie Prepaid Cellphone,
and why that person had purchased, possessed, and used the
McKenzie Prepaid Cellphone.

36.  During the November 4 Interview, in response to
questions about his purchase, possession and use of the McKenzie
Prepaid Cellphone, GREGORY MCKENZIE, the defendant, stated the
following, in substance and in relevant part:

a.  MCKENZIE has never purchased a prepaid cellphone
in Manhattan;

b.   MCKENZIE has never possessed a prepaid cellphone manufactured by Samsung;

c.   MCKENZIE has never used a cellphone to communicate with an inmate in custody at the MCC; and

d.   MCKENZIE has never used a cellphone to communicate with an associate of an inmate who was in custody at the MCC.

37.   The statements made by GREGORY MCKENZIE, the defendant, described in the preceding paragraph, were false. In particular:

a.   MCKENZIE did, in fact, purchase a prepaid cellphone in Manhattan.  As described above, on or about January 30, 2020, MCKENZIE purchased the McKenzie Prepaid Cellphone from a store in lower Manhattan and activated that cellphone at approximately 6:05 p.m. on the same day.

b.   MCKENZIE did, in fact, possess a prepaid cellphone manufactured by Samsung.  As described above, from on or about January 30, 2020, up through and including at least on or about February 1, 2020, MCKENZIE possessed the McKenzie Prepaid Cellphone, which accessed cellphone towers consistent with the location of the McKenzie Vehicle; the locations of MCKENZIE's use of the McKenzie Bank Account; and the locations of MCKENZIE's place of work and residence.

c.   MCKENZIE did, in fact, use a prepaid cellphone to communicate with an inmate in custody at the MCC.  As discussed above, from on or about January 31, 2020, up through and including at least on or about February 1, 2020, MCKENZIE used the McKenzie Prepaid Cellphone to communicate with two cellphones that were used by Inmate-1 and ultimately seized from inside the MCC.

d.   MCKENZIE did, in fact, use a prepaid cellphone to communicate with an associate of an inmate in custody at the MCC.  As described above, from on or about January 31, 2020, up through and including at least on or about February 1, 2020, MCKENZIE used the McKenzie Prepaid Cellphone to communicate with a cellphone that was being used that day by Inmate-1 Wife.

### Count One
**(False Statements)**

The Grand Jury charges:

38.   The allegations contained in paragraphs 1 through 37 of this Indictment are repeated and realleged as if fully set forth herein.

39.   On or about November 4, 2021, in the Southern District of New York and elsewhere, GREGORY MCKENZIE, the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully did make materially false, fictitious, and fraudulent statements and

12

representations, to wit, MCKENZIE made the false statements described above at paragraph 36 to federal investigators, regarding his purchase, possession, and use of the McKenzie Prepaid Cellphone.

(Title 18, United States Code, Section 1001(a)(2).)

## COUNT TWO
### (Obstruction of Justice)

The Grand Jury further charges:

40.   The allegations contained in paragraphs 1 through 37 of this Indictment are repeated and realleged as if fully set forth herein.

41.   On or about November 4, 2021, in the Southern District of New York and elsewhere, GREGORY MCKENZIE, the defendant, corruptly obstructed, influenced, and impeded an official proceeding, and attempted to do so, to wit, MCKENZIE made false statements to federal investigators regarding his purchase, possession, and use of the McKenzie Prepaid Cellphone to impede and obstruct, and attempt to impede and obstruct, a criminal grand jury investigation.

(Title 18, United States Code, Section 1512(c)(2).)

## FORFEITURE ALLEGATION

42.   As a result of committing the offense alleged in Count Two of this Indictment, GREGORY MCKENZIE, the defendant, shall forfeit to the United States, pursuant to Title 18, United

States Code, Section 981(a)(1)(C) and Title 28 United States
Code, Section 2461(c), any and all property, real and personal,
that constitutes or is derived from proceeds traceable to the
commission of said offense, including but not limited to a sum
of money in United States currency representing the amount of
proceeds traceable to the commission of said offense.

### Substitute Assets Provision

43.   If any of the above-described forfeitable property, as
a result of any act or omission of the defendant:

     a.   cannot be located upon the exercise of due
diligence;

     b.   has been transferred or sold to, or deposited
with, a third person;

     c.   has been placed beyond the jurisdiction of the
Court;

     d.   has been substantially diminished in value; or

     e.   has been commingled with other property which
cannot be subdivided without difficulty;
it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p) and Title 28, United States
Code, Section 2461(c), to seek forfeiture of any other property

of the defendant up to the value of the above forfeitable

property.

                    (Title 18, United States Code, Section 981;
              Title 21, United States Code, Section 853; and
                Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

GREGORY MCKENZIE,

Defendant.

SEALED INDICTMENT

22 Cr.

(18 U.S.C. §§ 1001, 1512(c)(2).)

DAMIAN WILLIAMS
United States Attorney

*Brin Carr*

Foreperson

*I TRUE BILL. SEALED INDICTMENT. A.W.*
*3/16/2022*