UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

UNITED STATES OF AMERICA,

                            22-cr-166 (PKC)

      -against-                ORDER SETTING FORTH
                                   STATEMENT OF REASONS FOR
                                   SENTENCE

GREGORY MCKENZIE,

                       Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        This brief Order is intended to summarize and expand upon the reasons for the sentence imposed on defendant Gregory McKenzie.

        At sentencing on February 8, 2023, the Court confirmed that:

        1.     The materials the Court announced it had in hand were the only materials bearing upon sentencing.

        2.     The defendant had read, reviewed and discussed the revised Presentence Report ("PSR"), Addendum and Recommendation.

        3.     Neither side had any objections to the facts set forth in the PSR, whereupon the Court adopted the facts set forth in the PSR as the Court's Findings of Fact.

        4.     The Court, without objection from either side, found defendant to be in Total Offense Level 16, Criminal History Category I.

        5.     The Court alerted the parties that it would consider imposing a sentence above the advisory guideline.

        6.     Defense counsel spoke on defendant's behalf and the defendant spoke on his own behalf. The government also spoke.

The Court then announced a proposed sentence and the statement of reasons for that sentence.

In sentencing defendant, the Court considered all of the written submissions and arguments of the parties, as well as their oral statements. It considered all of the factors under section 3553(a), recognizing that it need not recount the application of each factor orally or in writing.

With respect to the nature and circumstances of the crime, defendant was employed as a Corrections Officer by the United States Bureau of Prisons ("BOP"). He entered a plea of guilty to the crime of obstructing an investigation into the smuggling of a loaded .22 caliber revolver into the Metropolitan Correctional Center ("MCC") by making material misstatements to federal law enforcement officers. The revolver was recovered on March 5, 2020 from inside a cell in 7 North of the MCC.

Specifically, McKenzie was informed that the interview by law enforcement agents was part of an investigation into the smuggling of a loaded revolver into the MCC. Agents were aware of guilty plea of Deejay White, an inmate of the MCC who possessed the revolver.[1] They asked McKenzie about the purchase and use of a burner phone, communications on that phone with Deejay White and a possible meeting with his wife Dawntiana White.

McKenzie, who elected to speak with law enforcement at an interview conducted at a Dukin Donuts, denied the purchase of a burner phone and denied communicating with

---

[1] A superseding information was filed under seal on July 23, 2021 charging Deejay White with, among other charges, conspiracy to possess contraband ( a loaded revolver, oxycodone and a cellphone) while an inmate at the MCC and a felon in possession of a firearm. He entered a plea of guilty to those crimes, among others, on July 23, 2021.

2

Deejay Whiite on the phone or meeting or communicating with White's wife. He conceded that he once owned a burner phone to arrange liaisons unrelated to his work for the BOP. He also told agents that he had been in the area of the purported meeting with Dawntiana White on the night the agents were inquiring about but he had not met with her but with associates of a different inmate who wanted McKenzie to deliver food to the inmate. Without any offer or solicitation of money, he agreed to deliver the food but later found balloons with drugs in the container of food. He discarded the container, purchased Chinese food for the inmate, delivered the food to him and did not report the incident to any superior.

Cellphone records and video recordings told a different story of McKenzie's abundant interactions with Deejay White and Dawntania White. On January 30, 2020, McKenzie purchased a prepaid cellphone in lower Manhattan, paying for it with cash he had withdrawn from an ATM minutes before. His shift at the MCC began at midnight and shortly before he was seen on video entering the MCC walking around (not through) the metal detector for screening staff and proceeded to Unit 7 North where Deejay White was housed and the firearm was later recovered. On January 31 and February1, 2020, McKenzie's prepaid phone exchanged 52 text messages and one voice call with Deejay White's contraband phone inside the MCC. McKenzie's prepaid phone also had 10 voice calls with Dawntiana's cellphone. The cellphone location information placed McKenzie in close physical proximity to Dawntiana's phone between 8:15 pm and 8:49 pm on January 31, 2020, indicating a likely face-to -face meeting.

Although the law enforcement interview of McKenzie took place on November 4, 2021, he was not arrested, and the indictment unsealed until March 18, 2022. Dawntiana White

3

entered a plea to related crimes on the day of McKenzie's arrest. McKenzie entered a plea of guilty on September 14, 2022 pursuant to a plea agreement

As part of the history and characteristics of the defendant, the Court considered that McKenzie has no criminal record, had a substantial history of employment, served in the Navy Reserves and has been a good father to his children. The Court also considered that he has and will suffer collateral consequences from this conviction, including loss of his job and pension.

But McKenzie breached the trust placed in him by the BOP and society in general to hold secure those individuals entrusted to them. He knew that the interview by law enforcement was part of an investigation into the manner in which a loaded revolver was smuggled into a prison and the participants in the smuggling. This should have awakened his conscience. A person concerned about the safety and well-being of fellow Corrections Officers and those imprisoned, if he elected to speak at all, would have spoken truthfully and revealed all that he knew on a matter of this grave importance, even if it might expose him to serious consequences. He had abundant time from the date of his interview to the date of his arrest to have thought the matter over and come clean as to his false statements.

McKenzie's brief oral remarks at sentencing displayed an apologetic tone and characterized the obstruction of justice as a bad choice and a mistake that he regrets but his acceptance of responsibility and remorse were neither full throated nor sincere. His plea allocution was no better. He said "he knowingly and willfully did not choose to answer where I purchased the prepaid cell phone, the make of the prepaid cell phone, and whether I had communicated with an inmate at MCC in New York. I knew that not providing those truthful answers was wrong." Of course, his crime was not one of "not choosing to answer" but of lying

and misleading law enforcement. Nor does his letter to the Court dated January 23, 2023, part of his sentencing submission, display insight into his criminal behavior: "I panicked and made very bad decisions that morning [of the interview]."

For many crimes, for example, robberies, assaults and murders, the harm to the victims cannot be undone. For others, such as financial crimes, the harm can be mitigated by restitution to victim. Indeed, pre-sentencing restitution to a victim is a powerful display of remorse that a judge may and should take account of in fashioning a sentence. This defendant has made no sincere effort to undue the effects of his crime. Having first elected to speak and speak untruthfully, he has made no effort to correct the wrong by informing law enforcement of the content of the 52 text exchanges with Deejay White, the ten phone conversations with Dawntiana White or the face-to-face meeting with her. The Court considers this circumstance solely as to the degree of remorse, acceptance of responsibility and harm to the victim.

While all section 3553(a) factors were considered in fashioning a sentence, among those of special prominence are the need to reflect the seriousness of the offense, impose just punishment and deter others from similar conduct. The maximum term of imprisonment for the crime is 20 years. The advisory guideline range of imprisonment is 21 to 27 months. After concluding its statement of reasons, the Court announced a proposed sentence of 36 months imprisonment, 3 years supervised release, waiver of the fine based on limited assets and earning ability, and a $100 special assessment.

The Court next enquired of the parties whether either had an objection to the Court's proposed sentence or the reasons for the sentence. Defense counsel stated in words or

substance that the sentence was lawful.[2] The government had no objection. The Court then pronounced sentence and notified the defendant of his right to appeal.

The guideline, as applied to this defendant's conduct, did not capture the seriousness of the crime, the defendant's position of trust, the potential consequences of the obstruction to an important government investigation and the defendant's lack of true and deep remorse.[3] A sentence 9 months above the top of the advisory guideline range was, in this Court's view, sufficient but not greater than necessary to achieve the purposes of section 3553(a)..

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       February 8, 2023

---

[2] The transcript of the sentencing proceeding has not been prepared as of the date of this Order.
[3] Because of the combination of characteristics, the danger of unwarranted sentence disparities is avoided.